All rise. Hear ye, hear ye, hear ye. This Honorable Appellate Court in the 2nd District is back in session, pursuant to adjournment. The Honorable Michael J. Burke presiding. Mr. Superior. Your Honor, this is the third case in the morning. Call 213-0920, William Bremer v. City of Rockford. City of Rockford is at the line, cross at the lead, represented by Paul A. Denham. On behalf of Mr. Bremer, who is across at the lead, Mr. Thomas G. Wood. Mr. Denham, you may proceed. Good morning, Your Honors. Good morning. My name is Paul Denham. I'm a City Attorney for the City of Rockford, and may it please the Court, this appeal involves lifetime health benefits under the Illinois Public Safety Employees Benefits Act, better known as PSEBA. The crux of the appeal really has three main issues. First, whether the trial court permissibly expanded the definition of what a catastrophic injury is under Section A of PSEBA. Our Supreme Court has previously ruled that the term catastrophic injury under PSEBA is synonymous, their words, not mine, is synonymous to line-of-duty pensions under Section 4.110 of the pension code. Would you concede that the City would be on the hook for this pension if, in fact, the firefighter had applied for and received a 110 line-of-duty disability? The third part that the City is appealing is the causation element, which is under Section B of PSEBA. So based off the fact that there really isn't any credible evidence whatsoever. Well, let me rephrase the question. Sure. If he had applied for and received a 110 line-of-duty disability, would you concede that 10A had been satisfied? I do. I mean, I feel like after the Crowe-Evert v. City of Bloomington decision in 2003, line-of-duty pensions essentially are a rubber stamp for Section A under PSEBA. Why is this not a line-of-duty pension? The applicant applied for an Occupational Disease Disability Act pension, which has a much lower causation threshold. I don't know why that wasn't. What is the lower causation threshold? Tell me that. My reading under Section 4-110.1 of the pension code is the occupational disease disability pension can be satisfied through a rebuttable causation standard. For instance, the first paragraph of that provision talks about the types of activities that firefighters are engaged in and makes a presumption that any firefighter who has served for at least five years in that capacity for a municipality is then entitled, potentially, to an occupational disease disability pension, provided that he or she then suffers from the different types of disabilities that are listed within the rest of that provision. But there's still a service element. I mean, there is an element of that that says that it has to be obtained through service, firefighter service. There's a service element, and it is rebuttable as well. There's not a lot of litigation on this, but, in fact, this appellate court has one case where the city ended up intervening in a case. A firefighter came down with a pulmonary disease, ended up smoking a pack and a half of cigarettes a day. At the point of the pension hearing, the city intervened, provided this evidence in the pension board, and ultimately the trial court and appellate court all ruled that that firefighter wasn't entitled to that sort of pension. Here, the city concedes. What was the name of that case? Was it Springs? Did Perquette write it? No, I was on that one. That was the light standard, the telldown. Lyndon Mulder, the board of trustees of Naperville. It's 2011. It was where the plaintiff was indicating there was exhaust in the firehouse that was causing the problem. My reading of the statute is I don't even think that a firefighter really has to claim much causation whatsoever, unless there's something that rebuts the causation about his or her occupational disease. Well, I'm just trying to find the difference between 110 and 110.1. Both of them have service requirements. I mean, 110 says acts of duty. Again, it could be it isn't one thing. It could be a combination of things over time, just like 110.1, and both of them have to be through acts of duty or service. One says acts of duty, one says service. Well, I think this case is a perfect example of the lesser standard. Like every other pension case, Mr. Bremmer had to submit himself for evaluation to at least three medical providers, independent medical evaluators, about his medical condition. The first question that these individuals were asked isn't an issue. He clearly has a heart condition, and each of the independent evaluations ruled as such. In terms of the second question about causation, because each of these individual evaluators were asked, I don't think any of these evaluations are admissible in a court of law in terms of placebo, but at most each of these evaluators speculated that there might be a slight causal connection between Mr. Bremmer's service as a firefighter and his heart disease. And in particular, all of these different opinions are quoted in the record before you as well as the brief. I'm not going to repeat it here, but each of them used terms like fairly unlikely, maybe related in some small degree, may very well cause, I would believe that this could have contributed, very unlikely, not clear, an increased risk. These aren't any sort of statements from a medical provider saying, yes, in fact, Mr. Bremmer's heart disease was caused by his service as a firefighter. They're speculating as to, in some small degree, there's a potential that some of the things that he did could have been related to his service as a firefighter. Now, I think in terms of Section A that's relevant because I think the trial court completely glossed over the fact that these are two different provisions. Didn't the trial court gloss over the fact that your contention is that there had been a line of duty pension? That it would have been a rubber stamp? I think under the Supreme Court case in Crowley, there's no, it's definitely clear that any sort of line of duty pension under Section 4-110 of the pension code satisfies Section A. Assuming that the proofs are sustained in the declaratory judgment action. I think that... Was the city of Rockford a party to the proceeding before the pension board? It was not. Then how would res judicata, estoppel by judgment, collateral estoppel, equitable estoppel, or anything have any effect on your abilities to demand strict proof thereof? Because if you read Crowley, Crowley said something, and I quote as best I can, the only issue before us is what the definition is relative to what a catastrophic act is. It didn't say anything about res judicata. It didn't say anything about collateral estoppel. It also said that the parties agree as to what the facts are. He says the argument in Crowley was actually, at least the municipality was claiming, that a catastrophic act was a catastrophic act. It was something that was catastrophic. It was something that supposedly ended the person's career, both as a firefighter or a police officer, and precluded future employment. And if it precludes future employment, then obviously payment for insurance premiums would make some logical sense. So when you say Crowley, I suggest you go back and read it again and see exactly what it says and what it doesn't say, and don't assume that it says something when it doesn't even address the issue. There's nothing in Crowley that addresses your right as attorney for a city or a village or a municipal corporation or fire protection district to contest whether or not proofs have been established to establish a catastrophic act. Now, maybe in the appropriate circumstance, it would not be an abuse of discretion for a trial court judge to say, I will allow three expert opinions, I will allow further testimony, et cetera. But it doesn't say what you said it said, and I just wanted to clarify that point. I apologize if I misspoke. No, you didn't misspoke. You miscomprehended. You spoke accurately about what you thought Crowley said, and I'm telling you Crowley didn't say what you said it said. Right. In Crowley, the issue was whether the person under the legislative history would get a line-of-duty pension if, I'm sorry, continue on with health benefits if they get a line-of-duty pension, whether one was synonymous with the other. My understanding about Crowley is the focus of that case was what the definition of catastrophic injury was, and based off of the legislative history in which three members of the legislature made statements on the floor, essentially saying, and I've got one of them in front of me, they're all quoted in my brief, the Crowley court made the determination that no matter what the dictionary said, no matter what anyone says about what a catastrophic injury is, that's synonymous. But does it also say any judgment rendered by a pension board is binding on persons or parties that are not parties to the proceeding? The question raised in front of me was whether, had he applied for a line-of-duty pension, would I believe that satisfies A, and I do. As a municipal attorney in practicing, if there was a pension board decision saying that he had a line-of-duty injury, I would believe under Crowley and his progeny that, yes, it is satisfying of that part of the statement. It's been filed. It's going through editing. It might be on the watchbook. Okay. Is there a factual issue as to 10B? I mean, is there an issue of fact that's presented by all these pleadings that preclude summary judgment on 10B? I think there could potentially be a fact issue under 10B. Do you weigh that? In this case, I don't know what evidence could possibly be reviewed by a jury, which would show any sort of causation element with respect to whether the injury, the disease that Mr. Bremer suffered, was in response to an emergency situation and or investigating some sort of criminal wrongdoing. You know, the legislature, my analysis of PSEBA is especially based off of the Crowley decision under 10A in terms of it being synonymous with line-of-duty disabilities. The legislature wanted something more than just anyone who was injured in the line of duty. Two firefighters can have exactly the same injury. One falling off a ladder during a raging fire and the other cleaning hose in the firehouse. I think what 10B does is it provides an extra hurdle for an applicant to jump through, per se, in the sense that the first firefighter, who clearly was responding to an emergency fire, suffered a leg injury, could no longer work. That person's entitled to PSEBA benefits. In terms of the second firefighter, I don't think that's true. At least, I would advise my client to deny PSEBA benefits in that case. Obviously, that's subject to a similar situation. Based upon your reading of GAF? Yes. How many pensions are there? Is it three or four possible pensions? One of which is the only one that's delineated not line-of-duty? There are three different pensions. One is line-of-duty, one is not line-of-duty. And then for Mr. Bremmer's particular pension, occupational disease disability pension, is obviously only applicable to firefighters, not on the police side. And then there's a non-line-of-duty pension? A not-line-of-duty pension, yes. And it's a reduced level or rate of pension? It's a reduced rate of pension, yes. So why isn't it reasonable to conclude that the only pension that is not considered a line-of-duty is the one that's labeled not line-of-duty? Because the legislature did not express that. Hold on, hold on. It surely entitled one not line-of-duty, and if it's not line-of-duty, then isn't it the only one that's quote-unquote different from the other? When Senator Donahue was on the Senate floor, he knew or should have known that there were three different types of pensions. He said line-of-duty. Based off of that, the Supreme Court ruled that line-of-duty pensions under the specific provision of the Pension Code is synonymous with Section A, catastrophic injury. Obviously, Senator Donahue could have also said and occupational disease disabilities, but he did not do so. Under well-established tenets of statutory construction, it's impermissible for the judiciary to add specific terms to legislature's intent about what definitions mean. Justice Steigman would argue with you over using these comments on the floor where presumably nobody's even listening to what they're saying as evidence of legislative intent. Of course, the Supreme Court is the ultimate arbiter of that. That's the tool of statutory construction that the Supreme Court chooses to utilize. I don't see how someone who's not in one of these categories, which is synonymous with catastrophic injury, I understand the logic. I understand the fairness argument. I understand arguments as to why it might have made sense back at the time in 1997 for occupational diseases to be included within the statutory definition. But that didn't happen here. And it's up to the legislature then to amend the statute to include that within Section A of what it is meaning by catastrophic injury. Well, like you said, though, you have the added benefit of the layer of protection, you being the city, of 10B. So if we're only looking at 10A in this little microcosm, do we really think that the legislator standing up talking about line of duty was totally in his or her mind discounting occupational, which is a permanent disability because of service? We would agree that the acts of duty under 110 in a firefighter situation is probably easier to prove than in a police situation, right? I mean, the case law talks about that's equivalent to a workman's comp situation, which is a rising out of or whatever. So I'm struggling with active duty versus service. One says you've got this disability that you can't work anymore because of your service. The other one says you've got this disability, you can't work anymore because of your acts of duty. And again, I struggle. Surely, he could have petitioned under 110, or in the alternative, he petitioned under 110.1. The Supreme Court mentioned 110 only in Crowley. Yes. But the Supreme Court was only dealing with someone who got a 110. They weren't, you know, I'm just saying, they've never really addressed the 110. The terminology all the legislators use is line of duty. Line of duty is the caption on top of section 110. And again, you said you could see the logic. Justice McClaren said, well, this one's in the middle. Do we look at it more toward, it's right in between the two, as I recall. Do we look at it as more toward line of duty or more toward line of duty? I think as a matter of statutory construction, you wouldn't consider adding something to the definition. Now, I will add to your point, too. I'm not certain that the legislators would have come to this conclusion. Again, we're not talking about people who necessarily have injuries here. We're also talking about people who are catastrophically injured in the sense that they lose their life in the call of duty. I don't know how this got through the legislature in terms of what they were thinking. But I have a feeling that their intention of passing this had a lot more to do, and the quotes on the floor seem to insinuate this, making sure that the spouse and family are provided with health insurance after someone has departed. I think that's the main impetus towards this particular piece of legislation. I would strongly disagree that, if anything, I think if they were mistaken about anything, that it would be expanded to the point that it has by Crowley. Thank you, Mr. Denham. Do we have time for a rebuttal argument? Mr. Rood, your argument in response and also your argument on the cross-examination. Good morning, Your Honors. Tom Rood for Defendant Appellee, Cross-Appellant William Brewer. I've got some comments to the remarks by counsel. First of all, Crowley just dealt with the 4-110 situation. I would be very surprised the Supreme Court would gratuitously start talking about a 110.1 situation because it wasn't presented. Secondly, I disagree with counsel. I read 110.1. It doesn't use the word presumption. It says that these are the types of things that firefighters are exposed to, heat, fumes, gases. And then it goes down into the second paragraph and says that if you have heart disease or some other problems, a misprogrammed heart disease that resulted from service of the fire department, then you're entitled to improve the 110.1. If you look at the pension board's decision, they went through all those factors. And, you know, I don't think there's a different standard of proof at all because under 110 and 110.1, the statute says that the pension board is to conduct the hearing according to 4-112. 4-112 says pension board goes out, gets three docs. The docs don't even have to agree, but they have to get these three doctors, they've got to evaluate their opinions, and they have to look at the other facts and make a decision. And in this case, the pension board decided, by the preponderance of the evidence, that this injury resulted from service. And I also disagree with counsel when he says, oh, they say unlikely and this and that. It's not so indefinite. After the first part of the hearing, there weren't the opinions that the pension board wanted. And you'll see in the record, and I was there, the pension board said, we want to solicit more opinions from the doctors. And so two out of the three wrote back, and one was Dr. Stagel. And he based his opinion, this is under number nine of the pension board's decision, and he based his opinion on the literature. And he says, this could come from fumes and chemicals and pesticides and things like that, but in the literature, carbon monoxide could be the cause of underlying cardiomyopathy or exacerbated. And then he says, if Mr. Brammer was exposed to carbon monoxide as a firefighter, then it could be related. Nobody says definitely. Experts say it could be. And then the finder fact looks at the facts and comes to a decision, which happened here. Did the trial court properly find that the plaintiff would have received a 110 disability pension had he applied for it? Judge, I think that was something that the trial court said, and I agree with it, because the three doctors said, provided their opinions, and the pension board looked at the opinions, and they went with the opinion that was based on literature, and the one that made sense to them in the background is firefighters, and whether we're under 110 or 110.1, the standard's the same. Did this problem result from acts of duty or service of duty? I don't see the difference between the two. And I believe that a 110 or 110.1 pension that results from acts of service or duty are owing to duty, and that 111, as I pointed out in my brief, is labeled not owing to duty. It's really pretty clear. The trial court relied upon that, and I think they were right. Now, the other thing that's really interesting here, Judge, is that this case came before Judge Prochaska for a decision on a motion for summary judgment, not just a motion for summary judgment, but a cross-motion for summary judgment, and to have counsel suggest to the court that their issues of fact is clearly improper. We, the city and I, presented to the court the pension board's decision. We presented affidavits to the court, and based on that, the court made its decision, and we both came before the court and said, here are the facts. Decide it's a matter of law. I think it's highly improper for a counsel to suggest there's an issue of fact. Secondly, the pension board, if you look at the defendant's brief, at one point he said, you know, if Mr. Bremer filed a 110 pension, then we could have intervened and done all this stuff or sought review. But the fact of the matter is the pension board made its decision, and the decision stood, and there was a member of the city council sitting as part of the pension board. It's revealed in the record. So they knew about it, and I think it really boils down to, is this a line of duty? As the terms are more generally used, the defendant argues, you know, line of duty is a term of art. Let's assume you're correct in 10A. Yes, Judge. All right. And now we're going to switch to 10B. Yes, Judge. Because it's a little bit of a different situation with 10B. We don't have this Crowey situation, correct? You have to rely on the evidence that's been presented at summary judgment. Well, Judge, the evidence at summary judgment was pretty compelling. The doctor said, as a premise, exposure to CO2, fumes, exertion could cause an exacerbation, could cause the underlying cardiomyopathy. And then the second step is the pension board found that most all of his calls, Mr. Bremmer's calls, were of emergency nature, okay? And then we submitted Mr. Bremmer's affidavit that said every fire I went to, and I'd have to overhaul it afterwards, every fire and overhauling was an emergency situation. Did Rockford agree or stipulate that the pension board's decision relative to the doctors deciding that it was an emergency situation? Did they stipulate to that? I don't think the doctors indicated that it was an emergency situation. I think that the pension board, if you look at the findings of fact portion of the pension board's decision, one of the findings of fact is that most all of the calls were of an emergency nature, but there was another step. The other step was in addition to the pension board's findings, Mr. Bremmer tendered an affidavit in accordance with Rule 191 to support our position on cross-motion for summary judgment, where he said all the fires I went to that I was exposed and I did overhauling, which means you go through the fire to make sure it's out and doesn't start again. I was exposed to fumes, and those were all emergencies. And it's not hard to tell or imagine that a live fire situation is an emergency. Now, the city provided an affidavit from their man, and he didn't controvert at all that fires are emergency situations. So in terms of the proof that was presented to the court with the pension board decision, we had the affidavit of Mr. Bremmer that tied up that all these calls were emergencies. We had the doctors that said exposure to CO2 could cause this. And so as I see the emergency situation, all the dots are connected. Can we say that it was on January 5th of 2000 that he had an explosion that caused this? It's a cumulative effects. 110 allows a cumulative effect to be a line of duty. 110.1, he's exposed to CO2. He's exposed to burning furniture and carpeting and chemicals. And so there's no question that his exposure under the fact was clearly, and it's uncontroverted, in emergency situations. Then there was a portion where Mr. Bremmer had to assist an investigator who was investigating the cause of the fire, about half the cases. And in about 7% to 10% of cases, he said there was suspected criminal activity. I don't even need to rely on the criminal activity assisting an investigation because all this overhauling was a dangerous situation that was an emergency. But in addition to that, we do need another factor under 10B of placebo, that his exposures, when he said he was exposed, he said, I've been trained on this, I know, I'm exposed to carbon monoxide. He was exposed for one career. He was a firefighter in 1976. He was disabled in 2004. The pension board, the firefighters there, they understand the nature. They understand the exposures. And we have them coming to the conclusion that this arose from. And there was no presumption. I don't see a presumption under 110A. What's our standard of review on this? Standard of review. What's our standard of review? Oh, de novo, Judge. All right. If we're looking at this with fresh eyes and we're looking at all these affidavits de novo, why is it improper for counsel to argue that in the alternative, at least, that there's a question of material fact? Oh, because, and I believe one of the cases that's cited in my brief is Cantwell's versus Pecho's, and there's a long line of cases that say when the parties present cross motions for summary judgments, they can't go back and argue that there's a question of fact. Let me ask you a different question. Yes, Judge. Is it improper for us to find an issue of material fact? I suppose if it's a de novo review and you think that there's an issue of fact, then you can find it. But my thought of it is that there isn't an issue of fact because I know the dots are all connected. But if you can find one and you're uncomfortable with it, I suppose. I'm just wondering about the propriety of it. That's all I'm asking. In a cross motion for summary judgment, I think under the case law, you should just reject their position that there's an issue of fact. Well, the case law does say that it's not improper for the court to find an issue of material fact, even though the parties are arguing that. Well, I'm not arguing that there's an issue of fact, but then, and I think that takes care of 10A and 10B. And so move on to my counter complaint. Count two of my complaints sought attorney's fees under the Wage Action Act. And the trial court looked at a very narrow definition of wages and said it's just basically what you get paid for your services by our piecework. I think the discussion was, I don't recall exactly what he said in his decision, but that was basically where we were. The judge rejected that the idea of wages could include these placebo health insurance benefits. There was a case, I think it's NORWAC, that is cited heavily by counsel, and he relies on that. And the NORWAC case came right out and said that these benefits are post-employment benefits. But, you know, in that case, it made sense. The court was presented with a firefighter who was determined to be disabled, and then they started paying his benefits. But prior to his determination, he went back and said, hey, pay my benefits for the time period before I was rendered disabled. And of course, it's now. Now, you only get payment post-termination. You can't go back before you're disabled. The court didn't look at the Wage Act. The placebo has got really interesting language about who's entitled to these benefits. And placebo, I think it's section 10A says full-time firefighters are entitled if they're injured in the, if they suffer a catastrophic injury. And part-time don't get it. So the whole concept is you have to be a full-time firefighter or safety employee and then injured, suffering from a catastrophic injury, and meeting the other requirements, then you get it. In my mind, if you're entitled to this only as a result of your full-time employment, that this is a benefit. And a broader deficit initiative of wages would include amalgamates, health benefits, all kinds of things that are part of the employer-employee deal. In NOAC, the Supreme Court had to decide between two arguments instead of three. Two arguments were, is the firefighter or the employee entitled to insurance benefits from the date of the injury or from the date of the pension judgment? Right. And the third issue is would he be entitled instead to insurance benefits from the date of the entry of the declaratory judgment, which is the first time upon which the city was a party to a proceeding, personal jurisdiction was obtained over them, and the rights that were declared at that time indicated that it was liable. So NOAC, as you said, was silent about post-employment. It was also silent about the third possibility, which was that maybe had the Supreme Court been given the opportunity to address the issue by the municipality and argued that they weren't bound by a collateral proceeding and they would only be required to make payments upon the date of the entry of the judgment against them or it, we can say that NOAC isn't controlling either. Would we not be able to say that? I don't think it's controlling here at all because here we're dealing with the question of what constitutes wages, and NOAC was really dealing with at what time payments would be due if you're entitled to placebo benefits. And I know I'm out of time. Could I have a few extra minutes? I'll give you two minutes to talk about your other issue. Yes, Judge. Okay. So that's attorney's fees. I think they're wages, and I think that they ought to be allowed. And under Count 3, we saw some damages, and there were several damages we saw. One was actual out-of-pockets by Mr. Bremer. He paid health insurance. He paid some medical bills, and he … Was it $38,000? No, he didn't pay the $38,000. I think our total out-of-pockets for health insurance were about $6,000. All right, that's the $6,001. Is that being appealed here? Is that being appealed here? Yeah. Oh, the $6,000? No, no, that's not appealed here at all. Nobody raised that on appeal. And so I saw two additional types of damage. One, Mr. Bremer could not afford insurance for some 33 months, and he was uninsured. And one of our claims was that the city pay us our damages because we assumed the risk of being uninsured. And the Raintree case, which I cite, it's a Supreme Court case, says, you know, if you're a plaintiff, you can collect if you have a detriment or if the other side has a gain. In this case, we had a detriment. There's no question that there's value to shifting risks. It's what life is, it's what insurance, all kinds of insurance is about. And what the city did was by refusing to provide the insurance, they shifted the risk to Mr. Bremer. And Mr. Bremer, even though the city, even though he didn't pay it, he suffered the detriment of the risk of medical bills. And my argument is, and it's probably not the best argument, and that is that the value of that is at least the amount of the premium that the city was going to charge him. I tell you why it's not the best argument. It's because Mr. Bremer wasn't just somebody applying for insurance. He was disabled. He was sick. He probably couldn't get insurance. But he shifted the burden to his insurance company. What's that? He shifted the burden to his insurance company. The city's. Yeah, but he shifted the burden. Didn't somebody else pay the month? This was after the accident, right? No. That was Mrs. Bremer was the only one insured under a health insurance policy because Mr. Bremer couldn't get insurance. But the amount of the risk was that I came to the conclusion the amount that they would charge us for premiums. And that's the amount that they saved. And they say that. So he didn't pay for the premiums. He was uninsured during this time is what you're saying. Yes, sir. Okay. Yes, sir. But there's a detriment and there's a value to it in the Rain Tree case. Now, the defendant doesn't even argue the Rain Tree case in a brief. And I thought that was pretty interesting. Also, Judge, with regard to the $38,000 that Your Honor mentioned, there was another category of damages. And basically Mrs. Bremer was involved in an automobile accident. It was a one-car accident. Country companies paid under medical payment provisions and some $36,000, $38,000 in medical, something like that. And the court held that because she's not a party to this case, Mr. Bremer cannot claim those damages in this case because he doesn't have standing. And I thought initially that the family expense statute provided him that standing, but I was wrong. Because after I researched the cases, I found out a second district case that says Mr. Bremer always had the right of common law. The family expense statute made the wife responsible for her own damage so she could claim them. So, Mr. Bremer. Okay. Is that it? Yeah. Okay. Thank you, Judge. I appreciate your time. You will have time for rebuttal on your cross appeal. Okay. Thank you. Mr. Denham, your rebuttal on your appeal and your response on the cross. Thank you, Your Honor. And I'll be brief here. The closing counsel keeps mentioning that there are disputes of material fact here. I'm not sure I raised those arguments. With respect to subsection A, it's a question of statutory interpretation, abuse of discretion. The only factual inquiry that's somewhat relevant to that case is just the fact that the two different provisions of the pension code are different. You know, there's a standard about acts of duty versus a standard that's a revocable presumption in terms of causation about the injury. With respect to subsection B of CEBA, I don't think the city opposes any of the affidavits that Mr. Bremer signed. I don't think it really even has to. Clearly, the city understands that its police officers, its firemen do dangerous things, that they respond to emergencies. The question about subsection B isn't about whether he did things like that. The question is whether those things caused his disability. And with respect to the evidence on causation, I just don't think there's anything there. I don't think that's a disputed fact. Now, he quoted another medical opinion where he came to the conclusion that it could come, could be the cause, could be related. On the record, he's just said that every medical opinion is speculative like that. Well, I don't know. Under subsection B of CEBA, there needs to be some sort of admissible evidence, non-speculative evidence showing causation. Didn't the pension board make findings? They made a conclusory finding that the preponderance of the evidence was related to Bremer's service as a firefighter. Why isn't that sufficient? If it's sufficient under A, why isn't it sufficient under B? Well, it's a completely different statute. It's a completely different standard. They're looking at a statute which gives a rebuttable presumption that his service as a firefighter may have contributed and did contribute to his disease, not because of any sort of factual inquiry into the things he did as a firefighter, but just the fact that he worked there for five years. Just because he worked there for five years, he might be entitled to an occupational disease disability pension. And the city, I think that's the right decision under the rebuttable presumption standard. The city's not sitting here before you trying to overturn something. I guess I'm misunderstanding your argument, and I'd like to clarify something. Procedurally, you told us that Crowey says that a line-of-duty pension is a rubber stamp for a catastrophic act, and that the pension board's judgment relative thereto is effectively binding on the city, or is binding on the city. With respect to subsection A, this is a different... Yes. Why isn't the findings of the pension board just as binding on any other statute? The findings with respect to whether he was entitled to an occupational disease disability pension, not a line-of-duty pension under a different provision of the pension code. We're talking about causation here. If they determined that there was causation, we don't have to concern ourselves with line-of-duty. Let's say that that statement is an irrefutable standard of causation. Subsection B of PSEBA requires him to identify what duties caused it. Not necessarily that his injuries came as a result of his service in the fire department. I hearken back to the Lyndon Miller case, where the evidence from the firefighter was that he was sleeping in the firehouse, breathing in carbon monoxide from the trucks because there wasn't good exhaust, and that led to his occupational disease disability, which the trial court didn't buy. The board didn't buy trial court, and we didn't buy. But that evidence was out there. So what you're saying is if this gentleman had the same evidence sitting there, it wouldn't fall under 10B. There would be no emergency situation under 10B if he contracted this lung disease from sleeping in the firehouse. I'm saying that that conclusory statement, which is in this pension board's decision, says nothing with respect to Section B. Section B affirmatively requires some sort of evidence out there. Of emergency. In this particular case, the trial court said that the cause of his injury was both in response to emergency situations and an investigation of some sort of criminal activity. If you read the plain and express meaning of subsection B, there's a cause and effect. It has to be the reason. I don't know how, and I know there are some cases that are out there which basically say there could be X or X with respect to subsection B. I don't know how that wouldn't violate the plain meaning of the language there. With respect to the attorney's fees issue, I think Novak is binding on this court. He's essentially saying that there's a bargain for exchange where the city, in consideration for Bremer's employment, offered the potential PCEBA benefits. Novak clearly holds that PCEBA is a post-employment entitlement. I don't think it makes any sense to consider that quote-unquote wages under this attorney's fees statute, especially in light of the fact that this is a post-employment benefit not just for individuals like Mr. Bremer, but also his spouse and dependent children. With respect to the other cross-appeal on health insurance, it's not based on any sort of statute, any sort of precedent that I could find. He quotes precedent within his briefs, which I don't think are directly on point. There's no sort of court holding that ever has said that a defendant is entitled to – or, I'm sorry, a plaintiff is entitled to the cost of his premiums when he chose not to incur that expense himself. There was a 615 dismissal for failure to state a cause of action. Yeah, yeah. And you believe that was the case? The city is self-insured. It didn't incur any benefit. He suffered no detriment. He didn't pay anything. Arguably, he could have been injured in the room in medical bills. And if this holding stands, clearly the city will be on the hook for its inability to insure him at that point, which may include other types of consequential damage, maybe even psychological damages, which I think he's kind of getting at in terms of this risk-shifting idea in his head. But, you know, there's absolutely no precedent out there to determine what the cost of this even is. Even if we came to an agreement that the city should be liable for this type of damage, I can say that the value of that is $5. He's saying that it's the cost of the premiums that he didn't pay. Okay. Mr. Dunn, thank you very much for your argument. Thank you. Mr. Lugar, rebuttal on your prosecution. I'll keep my comments brief. I think I heard counsel indicate that he was unaware of some affidavits of Mr. Bremmer's, but they were all attached to the motions that were part of the court record, and if I've misheard him, I apologize. But I want to make that clear, that those affidavits were before the court. Also, this idea that the city didn't benefit by not insuring Mr. Bremmer because they're self-insured. If it didn't make any difference to them, why didn't they just keep them insured? They didn't keep them insured because it made a difference to them. And not only did they want to cut them off, but they incurred the cost of litigation. I don't think that's a genuine argument, and I think they benefited by the value of the risk that they didn't have to presume. I'll say one more thing, and I'll jump back to the line of duty, and defendant indicates that line of duty is a word of honor and means section 110.1. If you look at the quotes, and I don't think he quotes them. They're my brief of the Mrs. This is rebuttal on your question. I'm so sorry, Judge. That's fine. If you don't have any further questions for me. If this is a declaratory judgment action, how is it that some of the damages that you're asking for apparently accrue prior to liability attaching as of the date of the judgment? In other words, it's a declaration of the rights and liabilities between the parties. And if they haven't been declared until the date of the judgment, why are you making some retroactive claim? Well, my view of a declaratory judgment is to declare the rights of us with regard to a certain occurrence, and the judge, Prochaska, determined that they ought to have provided us with this insurance as of a certain date. And then we were given damages that weren't appealed based upon payments we made after that date. And I think once the rights are declared, we know what our rights are, and I think that our cause of action saying that we had damage because you shouldn't do what the court determined you should have done should stand. But. Best I got. That's the best you got. OK. Thank you so much. I appreciate your time. We'd like to thank the attorneys for their arguments today. In case you've been taken under advisement, the floor is adjourned.